UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| APRIL MICHELE HERREN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 09-247-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION &** |
| MICHAEL J. ASTRUE, | ) | **ORDER** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The plaintiff, April Michele Herren ("Herren"), brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security ("Commissioner"), which denied her July 9, 2007, application for supplemental security income ("SSI"). Because substantial evidence supports the Commissioner's ruling, the Court denies Herren's motion for summary judgment, R. 12, and grants the defendant's, R. 13.

### FACTUAL BACKGROUND

Born in 1981, Herren was diagnosed with mild cerebral palsy in 1988. Transcript ("Tr.") at 135, 303. As a child, doctors treated her for difficulty walking; at around age three an orthapedist put her right leg in a cast for two weeks and she then wore corrective shoes for a brief period. *Id.* at 241, 293-94. Herren has not been treated for cerebral palsy since her childhood. Herren completed high school, but has suffered from moderate learning disabilities her entire life. *See id.* at 210-79. After high school, Herren worked at the University of Kentucky as a secretary. *Id.* at 125-29. She also worked as a baby-sitter. *Id.* at 151. Most

recently, Herren worked as a teacher's aide and an adult caretaker. *Id.* at 150.

Herren has experienced social phobia her entire life. Herren's primary care physician, Dr. Gregory B. Dye, began treating her anxiety in 2003 and prescribed her Zoloft. *Id.* at 586-594. Herren's medical records show that she visits Dr. Dye annually, and that in 2005, 2006, and 2007, Herren's anxiety was well-controlled. *Id.* at 590-92. Because of her combined physical and mental impairments, Herren alleges disability beginning August 1, 2003. *Id.* at 93-99.

Regarding Herren's alleged physical limitations, medical consultant Dr. Barry Burchett examined her in August 2007, and found that she walks without a limp although there is stiffness in her feet. *Id.* at 530-33. Dr. Humildad Anzures also reviewed Herren's case and produced a report dated September 7, 2007. *Id.* at 540. After comparing her prior medical evaluations and Herren's statements of her own limitations, Dr. Anzures found Herren "[n]ot credible at all" and diagnosed her with "[n]o severe impairment." *Id.*

Regarding Herren's alleged psychological impairments, medical consultant Mr. Phil Pack, M.S., interviewed Herren on July 27, 2007. *Id.* at 524-28. Mr. Pack concluded that Herren had a history of generalized anxiety, social anxiety, and panic disorder. *Id.* at 528. Dr. H. Thompson Prout met with Herren on August 10, 2007, and found that she suffers from some psychological impairment that does not fit the description of a clearly defined disorder. *Id.* at 541-46. Dr. Prout concluded that Herren had: a mild restriction of activities of daily living; mild difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence or pace. *Id.* at 551. In a report dated February 10, 2008, state psychological consultant Dr. Timothy Gregg affirmed Dr. Anzures's findings. *Id.* at 555.

Finally, on February 14, 2008, a second state consultant, Dr. Edward Stodola, determined that Herren suffered from some moderate mental limitations, but was not significantly limited in most areas. *Id.* at 556-73.

Herren first visited Dr. Leah Shannon Cobb on July 23, 2008, for psychiatric treatment. *Id.* at 619-22. Dr. Cobb diagnosed Herren with a panic disorder and a social anxiety disorder. *Id.* at 621. She noted that Herren had "[p]ossible borderline intellectual functioning." *Id.* at 621. Dr. Cobb also stated that Herren has mild limitations, including social isolation and occupational difficulties. *Id.* Dr. Cobb increased Herren's Zoloft dosage. At Herren's next visit on August 20, 2008, Dr. Cobb reported that Herren's anxiety had improved due to the increased Zoloft. *Id.* at 617-18. Herren expressed an interest in cognitive behavioral therapy, and Dr. Cobb referred her to Dr. Joanne Kauffman at the Cumberland River Comprehensive Care Center. Herren began treatment there and reported some success in controlling her anxiety. *Id.* at 599-611, 615-16.

## PROCEDURAL BACKGROUND

Herren filed an application for SSI on July 9, 2007, alleging her disability began on August 1, 2003. Tr. at 93. The Social Security Administration denied her application initially on September 12, 2007, and then again upon reconsideration on February 15, 2008. *Id.* at 71-75. Thereafter, Herren filed a written request on March 6, 2008, for a hearing. *Id.* at 78. On January 30, 2009, Administrative Law Judge Donald A. Rising ("ALJ") conducted a hearing. *Id.* at 19-53. Herren and vocational expert William Ellis testified. *Id.* at 20.

At the hearing, Herren explained that her cerebral palsy affects her feet and her legs. *Id.*

3

at 34. She tires easily while standing, and has to take breaks approximately every ten or fifteen minutes. *Id.* When doing things like vacuuming at home, she takes breaks for thirty to sixty minutes between activities. *Id.* at 35. Her back hurts her at night, she has trouble sitting almost every day, and it takes her longer to walk than it would a normal person. *Id.* at 36, 47-48. Herren's pain also affects her hands and makes it difficult for her to type quickly and to hold scissors. *Id.* at 37, 42. For the pain in her legs and feet, she sometimes takes Tylenol but not any prescription medication. *Id.* at 36.

Herren also testified about her anxiety and panic attacks. *Id.* at 38. She explained that she began seeing a psychiatrist and a psychologist several months before the hearing because her panic attacks became more severe. *Id.* She sometimes has panic attacks in crowded places, such as at her church or at Wal-Mart. *Id.* at 44-46.

Because Herren's application is for SSI, she asks for assistance to supplement the income that she already earns. At the time of the hearing, Herren worked four days per week for three hours each day as a teacher's aide for pre-school and middle-school children at The Learning Center. *Id.* at 27-28. Beginning in November 2008, Herren also worked at Horizon Adult Healthcare Center ("Horizon") for approximately eight hours a day, at least two days per week; some days, she works both at The Learning Center and at Horizon. *Id.* at 30. At Horizon, she helps the adults with their daily activities. *Id.* at 31. She also runs her own dog-sitting business. *Id.* at 32 34. She can lift twenty-pound dog food bags. *Id.* at 39. Herren is permitted two ten-minute breaks while she works at The Learning Center, and two ten-minute breaks along with a lunch when she works at Horizon. *Id.* at 35. She also testified that she received her CPR

4

certification in December 2008. Id. at 27.

Vocational expert William Ellis ("Ellis") testified at Herren's hearing. *See id*. at 49-53. Ellis categorized Herren's work at The Learning Center and Horizon at the light exertional level. *Id.* at 50. The ALJ asked Ellis about the work capabilities of a person in the light exertional framework, with the extra limitations of: no continuous sitting, standing, or walking longer than thirty to sixty minutes at a time; lifting or carrying in the ten pound to twenty-pound range; and a restriction to simple tasks in an even-paced, object-focused environment. *Id.* Ellis testified that a person with those restrictions could not perform work as a teacher aide and/or recreational aide as defined in the Dictionary of Occupational Titles. *Id.* However, Ellis identified other occupations in the national and regional economies that a person with those limitations could perform. *Id.* at 51. Herren's attorney did not question Ellis. *Id.*

Following the hearing, the ALJ issued a decision on March 20, 2009, finding that although Herren had mild cerebral palsy and an anxiety disorder, she did not have a disability. *Id*. at 11-18. On March 23, 2009, Herren filed her appeal of the decision. *Id.* at 4. On May 28, 2009, the Appeals Council declined to review the ALJ's decision, *id.* at 1-3, at which point the ALJ's decision became the final decision of the defendant. Herren now seeks judicial review in this Court. She filed a motion for summary judgment, R. 12, as did the defendant, R. 13.

## DISCUSSION

Herren argues that the ALJ's determination of her residual functional capacity is not supported by substantial evidence. She also argues that the ALJ erred by failing to discuss or discredit Herren's ongoing chronic pain. Since Herren's arguments are without merit, the Court

denies her motion for summary judgment and grants the defendant's motion for summary judgment.

Judicial review is limited to determining whether substantial evidence supported the ALJ's ruling. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989)). The Social Security Act provides that findings of the Commissioner as to any fact shall be conclusive if supported by substantial evidence. *Heston*, 245 F.3d at 534 (citing 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston*, 245 F.3d at 534 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The ALJ correctly applied the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. Tr. at 11-18; *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)). First, he found that Herren has not engaged in substantial gainful activity since her alleged onset of disability. Tr. at 13. Second, he found Herren's mild cerebral palsy and anxiety disorder to be severe impairments. *Id*. at 13-14. Third, he concluded that the impairments did not meet or medically equal one listed in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* at 14-15. The ALJ then determined Herren's residual functional capacity ("RFC"). *Id.* at 15. He found that Herren can lift up to ten pounds frequently and up to twenty pounds occasionally, but that she can perform no continuous sitting, standing, or walking for longer than thirty to sixty minutes. *Id.* He also found that Herren can perform simple, even-paced tasks in an object-focused environment. *Id.* Fourth, the ALJ stated that

Herren could not perform her past relevant work. *Id.* at 17. At the fifth step, however, the ALJ found that there are significant jobs in the national economy that Herren can perform. *Id.* at 17-18.

I.  **The ALJ's RFC determination**

Herren argues that substantial evidence in the record does not support the ALJ's RFC determination. R. 12 at 6-10. She argues that the evidence shows that her mild cerebral palsy and severe anxiety together prevent her from performing even sedentary work. *Id.* at 7. Herren does not point to any objective medical evidence that would support a finding of limitation sufficient to meet the disability listings. She relies heavily on her own testimony about the tasks that she can perform and argues that the ALJ failed to comply with Soc. Sec. Rul. 96-7p, 1996 WL 374186 (Jul. 2, 1996) ("SSR 96-7p"), and 20 C.F.R. § 404.1529 when evaluating her subjective complaints. R. 12 at 9-10. Herren is incorrect.

Substantial evidence supports the ALJ's RFC findings. While Herren does suffer from mild cerebral palsy and an anxiety disorder, the ALJ correctly observed that "no treating or examining physician has mentioned findings that Herren suffers from limitations equivalent in severity to any listed impairment." Tr. at 14. In fact, none of the medical consultants found that Herren suffered from anything more than a moderate impairment due to her learning disabilities. Dr. Dye, Herren's treating physician, reported that Herren's anxiety is well-controlled with Zoloft. *Id.* at 590-92. Dr. Cobb and Dr. Kauffman also did not comment on Herren's functional capabilities, but their reports show that Herren does well with an increased Zoloft dosage. Thus, the ALJ relied upon the findings of the state psychological consultants, Dr. Prout and Dr.

7

Stodola, who found that Herren has: mild restrictions in daily living; moderate restrictions in social functioning; and mild difficulties with concentration, persistence, or pace. *Id.* at 15.

Herren's medical records show that all of her ongoing treatment are for mental problems. There is no evidence in the record that Herren is currently being treated for cerebral palsy. In fact, it appears she was last treated for it as a child. Nonetheless, the ALJ still considered Herren's claims of difficulty standing and walking due to chronic pain. The objective medical records show that Herren functions normally. The ALJ considered Dr. Burchett's finding that Herren can walk on her toes and heels and can squat. *Id.* at 16. Dr. Anzures also examined the records and found Herren had no severe impairment. *Id.* at 540. The ALJ then considered Herren's testimony about her daily activities in order to evaluate her capabilities.

The ALJ properly followed the requirements of 20 C.F.R. § 404.1529 and SSR 96-7p in making a credibility determination about Herren's testimony. Specifically, in assessing her testimony's credibility, the ALJ needed to decide whether either: (1) the objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. *See Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 230 (6th Cir. 1990) (quoting *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). The ALJ found that Herren's medical conditions *could* conceivably produce the alleged limitations. However, he held that based on the medical evidence and Herren's own testimony, Herren's symptoms are not disabling or limiting. Tr. at 16.

In making this determination, the ALJ gave weight to other parts of Herren's testimony

that show she could perform some types of work. He did not find Herren's testimony about her limitations credible. *Id.* The ALJ considered Herren's daily activities in determining her credibility. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (1996). Herren testified that she lifts twenty-pound bags of dog food. Tr. at 39. She works at least twenty-eight hours per week at The Learning Center and at Horizon, in addition to running her own dog-sitting business. *Id.* at 28-32. Herren testified, and the ALJ noted, that at each of these jobs she only has two ten-minute breaks per day outside of a lunch break at Horizon, where she works eight-hour shifts. *Id.* at 16, 35. She drives, cooks simple meals for herself, and takes care of her personal needs and hygiene. *Id.* at 121-22. All of these things directly contradict Herren's testimony of pain so severe that she must take extended breaks after short periods of work. Thus, the ALJ's credibility finding will not be disturbed. *See, e.g., Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987) ("Since the ALJ has the opportunity to observe the demeanor of a witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." (citing *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984))). Herren's own statements were the only evidence of severe limitations. Since the ALJ did not find Herren credible, the ALJ's RFC finding is supported by substantial evidence.

**II.    Herren's chronic pain**

Herren also argues that the ALJ failed to properly address the medical records documenting her treatment for the pain that her cerebral palsy caused. R. 12 at 10-12. As discussed above, there are no medical records that show treatment for chronic pain. First, Herren

points to medical records from her childhood physician, Dr. Mize, and argues that the ALJ should have considered them in his decision. *Id.* at 11. This can be construed as a "treating physician rule" argument; since an ALJ must always explain why he rejects the findings of a treating physician. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (holding that regulation 20 C.F.R. § 404.1527(d)(2) "requires the agency to 'give good reasons' for not giving weight to a treating physician in the context of a disability determination."). However, Dr. Mize was not a treating physician because Dr. Mize only examined Herren twice, when she was a child. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) ("The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." (citing *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983))). Thus, the ALJ is not required to assign weight to Dr. Mize's opinion.

Herren argues that the ALJ also failed to discuss her pain records from Harlan Appalachian Regional Healthcare Hospital. *Id.* at 375-516. Herren cites specific instances of pain treatment from her medical history. R. 12 at 10-11. None of these records support a finding of disability or require that the ALJ make a specific finding addressing them. Most of them are not even physician reports, but are chemical and laboratory test results with no physician analysis. The records that she cites do show evidence of pain, but the hospital admissions were all for discrete short-term issues. Herren suffered from pneumonia and seizures in her early childhood. *Id.* at 487, 515. In 1995, she was diagnosed with hypertrophic gastritis and

duodenitis (stomach disorders). *Id.* at 387, 459. A physician at the University of Kentucky Chandler Medical Center diagnosed Herren with a skeletal deformity in 1999, *id.* at 350-51, but there was never any further evaluation done. Herren fell and visited the hospital several times after she fractured her wrist in 2001. *Id.* at 378, 382, 394-402. Also in 2001, Herren was in a car accident and hit her head. *See id.* at 437. These hospital records do not relate to Herren's cerebral palsy, nor do any of the records reflect consistent treatment from a physician who would qualify as a treating physician. *See Barker*, 40 F.3d at 794. Therefore, the ALJ was not required to assign weights to the opinions.

Again, Herren's description of her daily personal and work activities contradict her argument that she suffers from debilitating pain. Herren works almost thirty hours per week at jobs where she receives a standard amount of break time. Herren's occasional use of Tylenol, a mild medication, to relieve pain further undercuts her complaints of chronic pain. *See Blacha*, 927 F.2d at 231.

Finally, Herren states that the ALJ erred as a matter of law pursuant to Soc. Sec. Rul. 00-4p, 2000 WL 1898704 (Dec. 4, 2000) ("SSR 004-p"). R. 12 at 1. SSR 00-4p clarifies the standard for use of vocational experts, vocational specialists, and other sources of occupational information. But Herren does not articulate any argument that would implicate SSR 00-4p, and the Court has no obligation to search the record to develop and support the arguments of the parties. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006).

11

## CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1)     The plaintiff's motion for summary judgment, R. 12, is **DENIED**;

(2)     The defendant's motion for summary judgment, R. 13, is **GRANTED**; and

(3)     A Judgment shall enter concurrently with this Memorandum Opinion and Order.

This the 16th day of March, 2010.

Signed By:
*Amul R. Thapar* AT
United States District Judge